392 F.2d 331
 DELAWARE VALLEY CONSERVATION ASSOCIATION and the 604 Additional Individual Plaintiffs, Appellants,
v.
Stanley R. RESOR, Individually and as Secretary of the Department of the Army of the United States of America, Stewart L. Udall, Individually and as Secretary of the Interior of the United States of America, and W. F. Cassidy, Individually and as Chief of Engineers of the Department of the Army of the United States of America, Appellees.
 No. 16772.
 United States Court of Appeals Third Circuit.
 Argued January 12, 1968.
 Decided March 8, 1968.
 
 Austin J. McGreal, Crumlish & Kania, Philadelphia, Pa. (Robert P. Garbarino, Philadelphia, Pa., Eugene F. Brazil, Philadelphia, Pa., on the brief), for appellants.
 Raymond N. Zagone, Appellate Section, Land and Natural Resources Division, Dept. of Justice, Washington, D. C. (J. Edward Williams, Acting Asst. Atty. Gen., Bernard J. Brown, U. S. Atty., Scranton, Pa., Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellees.
 Before McLAUGHLIN, FREEDMAN and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 McLAUGHLIN, Circuit Judge.
 
 
 1
 This appeal is brought by the Delaware Valley Conservation Association and 604 individuals, plaintiffs below, urging reversal of the District Court's dismissal of their complaint on motion of the defendants, Stanley R. Resor, Stewart L. Udall and W. F. Cassidy, individually and respectively as Secretary of the Army, Secretary of the Interior and Chief of Engineers of the Department of the Army. Jurisdiction of the District Court is asserted under the United States Constitution, Art. III, Sec. 2; 28 U.S. C.A. §§ 1331 and 1332; the "Delaware River Basin Compact", 75 Stat. 688; and several statutes under which it is alleged defendants purported to act.
 
 
 2
 In their complaint plaintiffs seek to enjoin the named defendants from proceeding with the development of the Tocks Island Reservoir Project and the Delaware Water Gap National Recreation Area. These projects were authorized by Congress as multi-purpose projects at an estimated cost of $192,400,000 for the Reservoir Project, Section 203 of the Flood Control Act of 1962, 76 Stat. 1180, 1182, and $37,412,000 and $18,200,000 for land acquisition and recreation facilities for the national recreation area. Section 8 of the Act of September 1, 1965, 79 Stat. 612, 614. The gravamen of appellants' complaint as indicated in their brief is that "defendants individually, in concert and through their agents and representatives are engaging in a series of unlawful and unconstitutional activities against plaintiffs, including, inter alia, arbitrarily and discriminatorily proceeding with acquisition and condemnation of lands and waters and entering into illegal power contracts for the reservoir project and recreation area without statutory authority and without satisfying the preconditions of the purported enabling act, in violation of applicable law and without funds to pay just compensation." On defendants' motion for dismissal for lack of jurisdiction or in the alternative for summary judgment, the District Court ruled for defendants holding that the suit was one against the United States to which it had not consented and, therefore, the court was without jurisdiction. The complaint was dismissed without leave to amend. Delaware Valley Conservation Association v. Resor, 269 F.Supp. 181 (D. C.M.D.Pa.1967).
 
 
 3
 Appealing plaintiffs claim the District Court erred by applying the wrong standard with which to judge the sufficiency of their complaint and, further, that the court abused its discretion when it dismissed the complaint without granting leave to amend.
 
 
 4
 Initially we must determine whether the complaint seeks recovery against the Government and is, therefore, subject to the defense of sovereign immunity. A key decision in resolving this issue is Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1948), where the Supreme Court recognized the difficulty of classifying various suits and stated:
 
 
 5
 "The question becomes difficult and the area of controversy is entered when the suit is not one for damages but for specific relief: i. e., the recovery of specific property or monies, ejectment from land, or injunction either directing or restraining the defendant officer's actions. In each such case the question is directly posed as to whether, by obtaining relief against the officer, relief will not, in effect, be obtained against the sovereign. For the sovereign can act only through agents and, when an agent's actions are restrained, the sovereign itself may, through him, be restrained. As indicated, this question does not arise because of any distinction between law and equity. It arises whenever suit is brought against an officer of the sovereign in which the relief sought from him is not compensation for an alleged wrong, but rather, the prevention or discontinuance, in rem, of the wrong. In each such case the compulsion, which the court is asked to impose, may be compulsion against the sovereign, although nominally directed against the individual officer. If it is, then the suit is barred, not because it is a suit against an officer of the Government, but because it is, in substance, a suit against the Government over which the court, in the absence of consent, has no jurisdiction." Larson v. Domestic & Foreign Commerce Corp., supra, 337 U.S. at page 687, 69 S.Ct. at page 1460.
 
 
 6
 The test established in Larson was reaffirmed in Malone v. Bowdoin, 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168 (1961), where the relief sought was the ejectment of a Forest Service Officer of the U. S. Department of Agriculture. See also; Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1962); Jasper v. Sawyer, 92 U.S.App.D.C. 94, 205 F. 2d 700 (1953).
 
 
 7
 Applying the above to the case before us, we find that plaintiffs seek relief in the form of "an injunction permanently enjoining and restraining the defendants, their agents, servants, employees and attorneys and all persons in active concert and participation with them, and requiring them to cease and desist from: (1) Proceeding, directly or indirectly, with prosecution of the Delaware Water Gap National Recreation Area and Tocks Island Reservoir Project. * * *". If this type of relief were granted, it would prohibit the continuation and completion of the government project here involved. Although nominally directed at the defendant officers, the relief requested here would operate directly against the United States since "the sovereign can act only through agents." Larson v. Domestic & Foreign Commerce Corp., supra, 337 U.S. at page 688, 69 S.Ct. at page 1460. The serious problems that would be occasioned if courts were permitted to grant plaintiffs the relief they seek in their complaint was clearly foreseen by the Supreme Court when it stated:
 
 
 8
 "For, it is one thing to provide a method by which a citizen may be compensated for a wrong done him by the Government. It is a far different matter to permit a court to exercise its compulsive powers to restrain the Government from acting, or to compel it to act. There are the strongest reasons of public policy for the rule that such relief cannot be had against the sovereign. The Government, as representative of the community as a whole, cannot be stopped in its tracks by any plaintiff who presents a disputed question of property or contract right. As was early recognized, `The interference of the Courts with the performance of the ordinary duties of the executive departments of the government, would be productive of nothing but mischief * * *'." Larson v. Domestic & Foreign Commerce Corp., supra, 337 U.S. at page 704, 69 S.Ct. at page 1468.
 
 
 9
 Appellants claim the United States has given its consent to this suit. They cite various statutes in support of this contention. We have reviewed these statutes and are convinced they do not support appellants' argument. For example, it is claimed that § 15.1 of the Delaware River Basin Compact, 75 Stat. 688, 715, waives immunity. Appellants cite that part of the statute which states: "The United States district courts shall have original jurisdiction of all cases or controversies arising under the Compact, * * *." They fail, however, to note that the very next sentence provides: "Nothing contained in the Compact or elsewhere in this Act shall be construed as a waiver by the United States of its immunity from suit." Appellants' contention must be rejected in light of the specific mandate of the statute which cannot be ignored.
 
 
 10
 Appellants also claim that Section 317 of the Federal Power Act, 49 Stat. 682, as amended, 16 U.S.C.A. § 825p operates as a waiver of immunity. That section provides, inter alia:
 
 
 11
 "The District Courts of the United States * * * shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder."
 
 
 12
 Assuming for the purposes of this appeal that the above statute could constitute a waiver of sovereign immunity in certain suits of the type before us, plaintiffs' complaint was, nevertheless, properly dismissed since although it does allege a violation of the Federal Power Act, 16 U.S.C.A. §§ 791a and 825s, the language used is entirely too general and, therefore, fails to meet the pleading requirements of Larson and Malone.
 
 
 13
 "And, since the jurisdiction of the court to hear the case may depend, as we have recently recognized, upon the decision which it ultimately reaches on the merits, it is necessary that the plaintiff set out in his complaint the statutory limitation on which he relies." Larson v. Domestic & Foreign Commerce Corp., supra, 337 U.S. at page 690, 69 S.Ct. at page 1461.
 
 
 14
 See also; Malone v. Bowdoin, supra, 369 U.S. at page 647, 82 S.Ct. 980. Furthermore, appellees' alleged violation of the above statutes is manifestly without foundation. See discussion infra.
 
 
 15
 Plaintiffs also have clearly failed to bring themselves within that class of claims recognized in Larson and Malone as against an officer as an individual rather than as an agent of the Government.
 
 
 16
 "* * * the action of a federal officer affecting property claimed by a plaintiff can be made the basis of a suit for specific relief against the officer as an individual only if the officer's action is `not within the officer's statutory powers or, if within those powers, only if the powers, or their exercise in the particular case, are constitutionally void.' 337 U.S., at 702, 69 S.Ct. at 1467. Since the plaintiff had not made an affirmative allegation of any relevant statutory limitation upon the Administrator's powers, and had made no claim that the Administrator's actions amounted to an unconstitutional taking, the Court ruled that the suit must fail as an effort to enjoin the United States." Malone v. Bowdoin, supra, 369 U.S. at page 647, 82 S.Ct. at page 983.
 
 
 17
 The only statute specifically cited by plaintiffs is the Federal Power Act. Section 791a of that Act only authorizes citation of the statute as the "Federal Power Act" and on its face is not a limitation on defendants' powers. Section 825s also cited by appellants, is inapposite. That section deals with the sale and disposition of power and energy generated at reservoir projects which in the opinion of the Secretary of the Army is not required in the operation of such undertakings. Beyond question and even by admission in the plaintiffs' own complaint, the engagement here involved has not reached the stage in its development where it is producing any power let alone excess power. Clearly this section fails to insulate plaintiffs from the dismissal ordered below.
 
 
 18
 We fail to find any conflict between the District Court's disposition of this litigation and our decisions in MeloSonics Corp. v. Cropp, 342 F.2d 856 (3 Cir. 1965) and Frederick Hart & Co. v. Recordgraph Corp., 169 F.2d 580 (3 Cir. 1948). The mere allegation of unconstitutional actions on the part of defendants does not deprive the court of its authority to dismiss a complaint since the court must examine those allegations and order dismissal where they are wholly without merit. Any other rule would result in an unnecessary increment of congestion in our trial calendars by requiring a full hearing every time a complaint contains an unwarranted general allegation of unconstitutional action on the part of some government official.
 
 
 19
 Appellants also claim the District Judge abused his discretion when he dismissed the complaint without granting leave to amend. On our own careful review of this action we must conclude that the dismissal without leave to amend was altogether proper since the complaint is founded on assumed and hypothetical situations which may never come to pass and, therefore, do not justify judicial intervention at this time. International Longshoremen's, etc., Union v. Boyd, 347 U.S. 222, 74 S.Ct. 447, 98 L.Ed. 650 (1954); State of Arizona v. State of California, 283 U.S. 423, 51 S.Ct. 522, 75 L.Ed. 1154 (1931); Jasper v. Sawyer, supra.
 
 
 20
 "Appellants in effect asked the District Court to rule that a statute the sanctions of which had not been set in motion against individuals on whose behalf relief was sought, because an occasion for doing so had not arisen, would not be applied to them if in the future such a contingency should arise. That is not a lawsuit to enforce a right; it is an endeavor to obtain a court's assurance that a statute does not govern hypothetical situations that may or may not make the challenged statute applicable. Determination of the scope and constitutionality of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function. United Public Workers, etc. v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754; see Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246, and Alabama State Federation of Labor, etc. v. McAdory, 325 U.S. 450, 65 S. Ct. 1384, 89 L.Ed. 1725." International Longshoremen's, etc., Union v. Boyd, supra, 347 U.S. at page 223, 74 S.Ct. at page 448.
 
 
 21
 "When the bill was filed, the construction of the dam and reservoir had not been commenced. Years must elapse before the project is completed. If by the operations at the dam any then perfected right of Arizona, or of those claiming under it, should hereafter be interfered with, appropriate remedies will be available. Compare State of Kansas v. State of Colorado, 206 U.S. 46, 117, 27 S.Ct. 655, 51 L. Ed 956. * * * There is no occasion for determining now Arizona's rights to interstate or local waters which have not yet been, and which may never be, appropriated." State of Arizona v. State of California, supra, 283 U.S. at page 463, 51 S.Ct. at page 529.
 
 
 22
 "The other injuries envisaged by Jasper will occur, if at all, only after the airport is in operation. The dangers, fears and annoyances he anticipates from the operation of an airport so far from his farm may never materialize. His forebodings are merely speculative and his suit was premature as well." Jasper v. Sawyer, supra, 205 F.2d at page 701.
 
 
 23
 Applying the foregoing to the complaint in this cause, we find allegations such as the following:
 
 
 24
 "* * * while the lines therefore have not been fully determined, the area is approximately 72,000 acres of land and water in the Counties of Monroe, Pike and Northampton in Pennsylvania and Sussex and Warren in New Jersey, including a proposed 37 mile long lake to be created by a proposed earthen dam presently estimated to be approximately 3200 feet wide and approximately 160 feet above the elevation of the River, all of which is subject to continuing change because the Reservoir Project is still under study and undetermined.
 
 
 25
 * * * * * *
 
 
 26
 "* * * defendants are presently conducting feasibility studies relative to the Reservoir and dam; the situs and nature of the dam have not been determined; no contracts have been let for the dam; no land has been acquired for the dam and none of the requisite filings have been made or licenses and approvals obtained from the cognizant regulatory bodies having jurisdiction over construction of the proposed dam; and it has not been determined that the dam will be built."
 
 
 27
 These and other charges found in the complaint clearly indicate that plaintiffs do not meet the requisite case or controversy requirements necessary for judicial determination.
 
 
 28
 We have reviewed appellants' contentions regarding the appropriations for the projects and the manner in which condemnation is being carried out and find them to be without merit. The court below was correct in dismissing the complaint without leave to amend.
 
 
 29
 The judgment of the District Court will be affirmed.